# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** § | |
| § | |
| v. § | NO. 4:22-CR-00268-SDJ-BD |
| § | |
| **REINALDO DE JESUS RIVERA-** § | |
| **RODRIGUEZ (1), EUGENES** § | |
| **BETANCUR-CORREA (2),** § | |
| ***SEALED* (3), and OSCAR** § | |
| **ANTONIO POLANIA-MARIN (4)** § | |

## MEMORANDUM OPINION AND ORDER

Attorney Don Bailey represents four codefendants in this case. The government moved to disqualify him based on conflicts of interest arising from the joint representation. Dkts. 120 (sealed motion to disqualify), 123 (sealed duplicate of Dkt. 120), 149 (redacted version of Dkt. 120); *see* Dkts. 124, 148 (responses); Dkt. 187 (supplemental response). The court held an initial hearing on the motions. Minute Entry for Dec. 13, 2024 (sealed). It then held a second hearing at which it informed the three defendants who were able to appear of the risks of being represented by conflicted counsel and obtained their waivers of those conflicts in accordance with *United States v. Garcia*, 517 F.2d 272, 276–78 (5th Cir. 1975). Minute Entry for Jan. 23, 2025. Having considered the government's motion, the responses and supplemental response filed by Bailey, and the attorneys' arguments and statements at the hearings, the court will deny the motion but impose conditions on Bailey's representation.

## BACKGROUND

The four codefendants face charges arising from their alleged involvement in an international drug-trafficking conspiracy. Three of them—Reinaldo De Jesus Rivera-Rodriguez, Eugenes Betancur-Correa, and Oscar Antonio Polania-Marin—have already been extradited to the United States; the fourth, whose identity is currently under seal, remains abroad. Bailey represents all four.

He also represents two defendants, Elmer Cano Montoya and Jhon Lopez Saldarriaga, in another criminal case pending in this court, No. 4:20-cr-00249-ALM-AGD (E.D. Tex.).

According to the government, the four codefendants in this case worked together to orchestrate an international drug sale. One of them allegedly grew up with one of the defendants in the related case and previously worked with him to run a drug operation in Colombia. The government's case relies in part on evidence obtained through use of a confidential informant who has cultivated ties to known and suspected Colombian drug traffickers.

According to Bailey, all four codefendants in this case have been framed by the informant. He argues that his joint representation of them does not create a conflict of interest because they are all innocent and therefore would not testify against one another. He adds that the defendants in this case did not know the defendants in the related case at the time of the alleged criminal acts, so there can be no conflict. Finally, Bailey asserts in his filings that the confidential informant attempted to frame him—that is, Bailey himself—for making false statements and for accepting a payment from a person subject to economic sanctions imposed by the United States Treasury Department's Office of Foreign Assets Control ("OFAC").

At the initial hearing on its motion, the government reiterated its argument that the conflicts between the defendants in this case and the defendants in the related case will impair Bailey's ability to represent his clients in plea negotiations. The government conceded that none of the defendants currently represented by Bailey has expressed an interest in cooperating, so no actual conflict has yet arisen. And Bailey assured the court that he would withdraw from representation if any of his clients expressed an interest in cooperating with the government.

The government indicated that the confidential informant will be a crucial witness in its case against the four defendants in this case but that the informant is not likely to be a witness in the related case. It also suggested that, if the defense attempts to undermine the government's case by impeaching the informant's trustworthiness, it may call Bailey as a trial witness to testify about his alleged interactions with the informant. Bailey responded that he thought his testimony would not be required.

Bailey suggested that, instead of disqualifying him from representing the codefendants, the court could appoint standby counsel or co-counsel to remedy the potential conflicts. The government argued that it prefers complete disqualification but agreed that the appointment of independent counsel for each defendant would be acceptable as long as appointed counsel were allowed to speak with the defendants outside of Bailey's presence. Bailey indicated that he would be content with that arrangement.

At the second hearing, the court proposed a three-pronged approach to address the issues associated with Bailey's representation of the codefendants and avoid the need for disqualification: (1) obtain valid conflict waivers through *Garcia* colloquies; (2) appoint co-counsel for each defendant that Bailey represents; and (3) restrict Bailey's representation of the defendants to the pretrial phase, such that the appointed co-counsel would represent the defendants at any trial. The government indicated its support for that approach. Bailey objected only to its third component.

The court then conducted *Garcia* colloquies with the three available codefendants, who knowingly and voluntarily agreed to Bailey's continuing representation despite understanding their right to conflict-free counsel and the risks of remaining represented by Bailey. (The fourth codefendant, who has not yet been extradited, was necessarily unable to appear at the hearing. The court intends to have a *Garcia* colloquy with him after he arrives.) Bailey submitted signed conflict waivers for all four codefendants. He also suggested that, instead of using its ordinary method of appointing counsel for indigent defendants, the court appoint three specific attorneys that he thought would be well-positioned to serve as co-counsel.

## DISCUSSION

### I. Conflicts of Interest

The Sixth Amendment protects a criminal defendant's right to counsel free from conflicts of interest, but a defendant may be represented by conflicted counsel if he knowingly and voluntarily waives his right to conflict-free counsel. Here, Bailey's representation of multiple codefendants

3

creates a serious potential conflict, but the multiple representation is permissible with sufficient waivers and the additional restrictions this order imposes.

### A. The Sixth Amendment and the dangers of multiple representation

The Sixth Amendment grants criminal defendants the right to be represented by counsel. Its "essential aim . . . is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159 (1988). Although there is a presumption that a defendant should have his choice of attorney, "[t]he right to counsel of choice . . . is not absolute." *United States v. Gharbi*, 510 F.3d 550, 553 (5th Cir. 2007).

The Sixth Amendment confers a right to "conflict-free counsel," *Mitchell v. Maggio*, 679 F.2d 77, 78 (5th Cir. 1982), and an attorney's representation of multiple criminal defendants in related cases "engenders special dangers" that the court must address, *Wheat*, 486 U.S. at 159. When the court finds an actual conflict of interest, "there can be no doubt that it may decline a proffer of waiver." *Id.* at 162. An actual conflict arises "when a defense attorney places himself in a situation inherently conducive to divided loyalties." *Mitchell*, 679 F.2d at 79. And the presumption favoring the defendant's chosen counsel "may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." *Wheat*, 486 U.S. at 164; *accord United States v. Pike*, No. 22-51003, 2024 WL 1192222, at *1 (5th Cir. Mar. 20, 2024). Whether a conflict of interest exists is a "highly fact-sensitive" inquiry that "depends on a number of factors, including, but not limited to, whether the attorney has confidential information that is helpful to one client but harmful to another; whether and how closely the subject matter of the multiple representations is related; how close in time the multiple representations are related; and whether the prior representation has been unambiguously terminated." *United States v. Infante*, 404 F.3d 376, 392 (5th Cir. 2005).

The court may permit a defendant to waive his right to conflict-free counsel if the waiver is knowing and voluntary. *Garcia*, 517 F.2d at 276. But because the court must consider the "special

4

dangers" that arise from multiple representation, there is no "flat rule" allowing conflict waivers. *Wheat*, 486 U.S. at 159–60. Before permitting a defendant to waive his right to conflict-free counsel, the court must hold a hearing to confirm that the defendant's waiver is knowing and voluntary, as "the willingness of an attorney to obtain [conflict] waivers from his clients may," in some cases, "bear an inverse relation to the care with which he conveys all the necessary information to them." *Id.* at 163.

### B. The serious potential conflict and the sufficiency of the defendants' waivers

The government argues that Bailey's representation of the four codefendants presents either an actual or a serious potential conflict of interest because the codefendants may be put in a position of testifying against one another in this case or of testifying against Bailey's clients in the related case. But the government conceded at the first hearing that none of the defendants has expressed an interest in cooperating. It nevertheless asserts that all six defendants are connected by their involvement in the same criminal enterprise and argues that the conflicts cannot be overcome by waiver.

According to the government, the four codefendants in this case worked together to plan and execute a 2,000-kilogram delivery of cocaine to the Sinaloa Cartel in Mexico. The government intends to offer each defendant a plea agreement that would include a reduction in sentence in exchange for the defendant's substantial assistance and cooperation against the other codefendants. Joint representation creates an actual conflict, in the government's view, because Bailey cannot recommend that any of his clients cooperate with the government if that cooperation would require testifying against another of his clients.

The government also asserts that Betancur-Correa, Cano Montoya, and Lopez Saldarriaga grew up in the same town and have known each other since childhood. Lopez Saldarriaga also allegedly frequented a brothel owned by Betancur-Correa's father. The government maintains that Betancur-Correa, Cano Montoya, and Lopez Saldarriaga all worked under a person called "La Bruja" at the same time and attended a meeting together to discuss plans to extend their drug-sales

5

territory. It asserts that Cano Montoya and Lopez Saldarriaga have not shown interest in accepting plea agreements and that their case will likely go to trial this year. Because Betancur-Correa allegedly knows about Cano Montoya's and Lopez Saldarriaga's criminal activities, the government contends that he would be encouraged to testify against them as part of any plea agreement the government offers him. Bailey could not encourage Betancur-Correa to accept a plea agreement without putting him in the position of cooperating against Bailey's other clients. Nor could Bailey be expected to rigorously cross-examine Betancur-Correa, should he be called to testify at trial.

Bailey argues that all defendants have knowingly and voluntarily waived the alleged conflicts of interest and that there are in fact no conflicts. Because each defendant maintains his innocence, Bailey contends that none could provide any incriminating testimony, and none would accept a plea agreement that required him to admit to a crime he did not commit. Bailey also asserts that three codefendants in this case know Cano Montoya and Lopez Saldarriaga only because they were incarcerated together in a Colombian prison.

The court concludes that the government has demonstrated a serious potential conflict. Bailey's joint representation of four defendants in this case and two in the related case puts him in a position inherently conducive to divided loyalties. Bailey cannot simultaneously advise defendants who are encouraged to cooperate against one another without sacrificing his duty to provide each with advice in his own best interest.

That said, the court is mindful of the strong presumption in favor of each defendant's counsel of choice. *See Wheat*, 486 U.S. 153, 164. At the second hearing, the defendants were informed of the risks of continuing with Bailey's conflicted representation and knowingly and voluntarily waived their rights to contest that conflict. When combined with the additional safeguards that this order imposes, those waivers are sufficient to protect the rights of each defendant.

## II. Attorney as Witness

An attorney generally may not serve as a witness in his client's case. But when the attorney has firsthand knowledge of facts to be proved at trial, his representation may impermissibly put him in the position of an "unsworn witness." Courts have broad discretion to disqualify attorneys who might act as unsworn witnesses because their involvement, or even their mere presence at the counsel table, risks impermissible harms to their clients, the prosecution, and the integrity of the judicial system. Because Bailey is likely to act as an unsworn witness, the court will impose safeguards to mitigate those risks.

### A. Problems arising from attorneys serving as sworn or unsworn witnesses

#### 1. The general prohibition on attorneys as witnesses

In addition to their obligation to protect defendants from conflicted counsel, federal courts have an "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Id.* at 160. Courts protect that interest by exercising "the power and duty to disqualify counsel where the public interest in maintaining the integrity of the judicial system" outweighs the defendant's interest in being represented by the counsel of his choice. *Id.* at 158 n.2; *accord United States v. Vaquero*, 997 F.2d 78, 90–91 (5th Cir. 1993).

Courts in this circuit apply "the ethical rules announced by the national profession in light of the public interest and the litigants' rights." *In re Am. Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992). Those rules include the court's local rules, the state rules governing attorney ethics, and the American Bar Association's Model Rules. *FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1311–12 (5th Cir. 1995).

This court's local rules state that "the Rules Governing the State Bar of Texas shall serve as a guide governing the obligations and responsibilities of all attorneys appearing in this court," and they adopt the Texas Disciplinary Rules of Professional Conduct. Loc. R. AT–2(a). The latter set of rules states, in part, that a "lawyer shall not accept or continue employment as an advocate before a tribunal in a contemplated or pending adjudicatory proceeding if the lawyer knows or

7

believes that the lawyer is or may be a witness necessary to establish an essential fact on behalf of the lawyer's client" unless the testimony is unopposed, relates to an uncontested issue, or certain other exceptions apply. Tex. Disciplinary Rules Prof'l Conduct § 3.08(a). Subsection (b) of that rule provides that a lawyer is not to continue as an "advocate in a pending adjudicatory proceeding" if the lawyer believes that he will be "compelled to furnish testimony that will be substantially adverse to the lawyer's client" unless the client consents after "full disclosure." And American Bar Association Model Rule 3.7 provides that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness" unless the testimony relates to an uncontested issue or disqualification of the lawyer would impose a substantial hardship on the client. Model Rules of Prof'l Conduct R. 3.7(a) (Am. Bar Ass'n 2024). In most cases, the applicable ethical rules therefore prohibit an attorney from acting as a witness by testifying under oath at his client's trial.

### 2. The unsworn-witness problem

Even when an attorney is not called to testify, disqualification may be appropriate if his representation of the client puts him in the position of an "unsworn witness." An attorney acts as an unsworn witness when his relationship to his client gives him first-hand knowledge of the events recounted at trial. *U.S. v. Locascio*, 6 F.3d 924, 933 (2d Cir. 1993).

The appearance at trial of an attorney who has first-hand knowledge of, or actual involvement in, the events presented may undermine the integrity of the judicial system in several ways. The attorney may prejudice his client because his involvement constrains him from making certain arguments on his client's behalf or because he is tempted to minimize his own involvement at his client's expense. *Id.* Or he may exercise an unfair advantage against the government because, through opening and closing statements or the questioning of witnesses, he may "subtly impart to the jury his first-hand knowledge of the events without having to swear an oath or be subject to cross examination." *Id.* And an attorney acting as an unsworn witness may tarnish the integrity of the judicial system by creating the appearance of unfairness in the eyes of the jury, the parties, the

8

bar, or the public. *See, e.g.*, *id.* at 934; *United States v. Rahman*, 861 F. Supp. 266, 278–79 (S.D.N.Y. 1994).

Several cases illustrate the problems that can arise.

In *United States v. Reeves*, for instance, the Fifth Circuit approved of disqualification of an attorney who appeared on two videotapes that his clients intended to use in their defense. 892 F.2d 1223, 1227 (1990). Because the attorney in *Reeves* would have been "forced either to refrain from commenting on the tapes or serve as an unsworn witness from the lawyers' podium," disqualifying him was within the district court's discretion despite the defendants' waiver. *Id.* In affirming the disqualification order, the Fifth Circuit noted that the concerns at play in an ordinary conflict-of-interest analysis "appl[y] with even greater force" because the attorney's "own interests, in addition to the representation of his client's interests, were at stake during the proceedings before the district court." *Id.* at 1227–28.

The Third Circuit reached a similar conclusion when faced with a defense attorney who had witnessed events that would be proved at trial. *Gov't of Virgin Islands v. Zepp*, 748 F.2d 125, 138–39 (1984). There, the attorney "was required to withdraw regardless of whether his testimony would be exculpatory or inculpatory" because his "interest in testifying on his own behalf impaired the exercise of independent professional judgment on behalf of his client." *Id.*

In *United States v. Kliti*, the Second Circuit reversed a conviction on ineffective-assistance grounds where the defendant's attorney was the only witness available to testify about potentially exculpatory evidence. 156 F.3d 150, 156 (1998). The court, the government, and the defendant's attorney had agreed that the attorney would elicit testimony about the exculpatory statements from another witness without mentioning his own knowledge of it. But when the other witness took the stand, he denied making the exculpatory statements. The attorney was placed in a conflicted position because he had to choose between testifying on behalf of his client and impeaching the witness, which would result in his disqualification under the appliable ethics rules, or not presenting exculpatory evidence at all. *Id.* The court reversed the conviction because the district court failed to protect the defendant's right to be represented by conflict-free counsel.

9

In another case, an attorney had spoken to a key prosecution witness about the charged crimes before he began representing the defendant. *United States v. Cruz*, 982 F. Supp. 946, 949 (S.D.N.Y. 1997). The court disqualified him because he would have been restrained from impeaching the witness. *Id.* at 950. If he attempted to impeach the witness "with information he learned during conversations that he had with her, [the attorney] would be acting as an unsworn witness." *Id.* at 949. But if he refrained from acting as an unsworn witness, his client would be harmed because the attorney might have been "the only witness capable of challenging [the nonattorney witness's] recollection of conversations between them." *Id.; see also, e.g.*, *United States v. Yannotti*, 358 F. Supp. 2d 289, 294–95 (S.D.N.Y. 2004) (disqualifying an attorney who would have been forced to choose between becoming an unsworn witness and "refraining from vigorously defending his client" because the attorney had been present when the confidential informant shot another man and had allegedly urged the informant to do so); *United States v. Simon*, No. CIV.A. 03-067, 2003 WL 21146816, at *2 (E.D. La. May 14, 2003) (explaining that an attorney's "representation of the defendant could deprive defendant of the most important witness who could testify on her behalf").

As noted, the unsworn witness's role as advocate may also give his client an unfair advantage because he can subtly impart to the jury his first-hand knowledge of relevant events without swearing an oath or being subjected to cross-examination. *Locascio*, 6 F.3d at 933. The defendant's waiver cannot cure that problem because the defendant "is not the party prejudiced." *Id.* at 934. In *United States v. Pineda*, the court concluded that an attorney who had first-hand knowledge of facts that would tend to prove the existence of the charged conspiracy had an unwaivable conflict of interest, explaining that the defendant's "right to counsel of his choice" had to "yield to the higher interest of the effective administration of the courts." No. 1:10-CR-70, 2010 WL 5510136, *6 (E.D. Tex. Dec. 7, 2010), *report and recommendation adopted*, No. 1:10-CR-70 1, 2011 WL 31771 (E.D. Tex. Jan. 5, 2011).

Indeed, an attorney with personal involvement in the case he is litigating may create the appearance of impropriety, which threatens the integrity of judicial proceedings, just by appearing

at counsel table during trial. *See, e.g., United States v. Melo*, 702 F. Supp. 939, 943 (D. Mass. 1988) (explaining that an attorney's "mere presence as counsel at trial may create an appearance of impropriety" where the defendant was accused of using the attorney's services to advance a criminal conspiracy without the attorney's knowledge); *United States v. Cannistraro*, 794 F. Supp. 1313, 1322 (D.N.J. 1992) (observing that "the mere presence of [the attorney] may create an appearance of impropriety to the jury" where the jury would likely hear testimony that the attorney was aware of allegedly fraudulent transactions).

Attorneys have also been disqualified as unsworn witnesses where their services were procured to aid in the alleged crimes without the attorneys' knowledge. *See United States v. Evanson*, 584 F.3d 904, 914 (10th Cir. 2009) (affirming disqualification of an attorney where two letters drafted by that attorney were likely to be introduced as evidence of the defendant's knowledge that his conduct was illegal because the attorney might discourage his client from relying on an advice-of-counsel defense or the attorney might be called to testify about the letters); *United States v. deBerardinis*, No. CR 18-00030-01, 2021 WL 1877025, at *1 (W.D. La. May 7, 2021) (disqualifying an attorney from representing a client at trial or even sitting at counsel table during trial, but not during pretrial proceedings, where the attorney had unwittingly aided in fraudulent loan applications and could be called as a witness); *Simon*, 2003 WL 21146816, at *1 (finding disqualification appropriate after concluding that "the jury will almost certainly hear and/or see evidence that will imply [the attorney's] involvement in preparing and filing the documents that underlie [the indictment]").

### B. The particular unsworn-witness problem here

The court ordered Bailey to file a supplemental response addressing the unsworn-witness issue. Dkts. 144 (sealed), 146. Bailey argued in that supplemental response that he will not need to be called as a witness because, when conducting meetings in Colombia, he "always has at least an interpreter present who can be a witness." Dkt. 148 at 7.

That is insufficient. Although the presence of other witnesses reduces the likelihood that Bailey will need to testify as a sworn witness, it does not mitigate the risk that he will impermissibly act as an unsworn witness. *See Simon*, 2003 WL 21146816, at *2 (noting that, even when another witness could testify about the meeting where the defendant confessed to the charged conduct, that testimony would highlight the attorney's presence and make him an unsworn witness). And as noted, attorneys' shared expectations about who will be required to testify at trial sometimes prove to have been mistaken. *See Kliti*, 156 F.3d 150 at 156.

In fact, Bailey's supplemental response only amplifies the court's concerns. In that filing, Bailey reiterates his intention to defend his clients by arguing that they have been framed by the government's confidential informant. Bailey also asserts that the same informant attempted to frame *him* by inducing him to sign false statements and to accept a payment from someone subject to OFAC sanctions. Dkt. 148. Bailey's references to his own interactions with the confidential informant in multiple filings on behalf of his clients in this case, Dkts. 113, 124, 134, 148, and at a sealed hearing, Minute Entry for Oct. 9, 2024, indicate that he plans to use his personal knowledge of the informant's alleged corruption in his presentation of his clients' defense.

Indeed, it is unclear how he could set that professed knowledge aside when zealously representing his clients. Bailey asserts that he "looks forward to cross examining" the confidential informant. Dkt. 148 at 5–6. That unusual assertion evinces a personal connection to the case that threatens the integrity of the judicial process. With respect to trial proceedings, no waiver will suffice because "the detriment is to the government, since the defendant gains an unfair advantage, and to the court, since the factfinding process is impaired." *Locascio*, 6 F.3d 934.

At the first hearing on the government's disqualification motion, Bailey proposed that, rather than disqualify him entirely, the court appoint separate standby counsel who could step in to represent each defendant if the potential conflicts ripened into actual conflicts. The government requested instead that the court appoint co-counsel who could independently consult with each defendant.

After that hearing, Bailey pointed the court to other cases in which he has represented criminal defendants in concert with standby counsel or co-counsel. Dkt. 187 (identifying No. 4:09-cr-00222-ALM-KPJ (E.D. Tex.), No. 4:09-cr-00197-ALM-CAN (E.D. Tex.), and No. 4:21-cr-297-ALM-AGD (E.D. Tex.)). Those cases only further heighten the court's concerns. In the first two of them, Bailey represented defendants Nichols and Byrd. The court appointed co-counsel to cross-examine Byrd in Nichols's trial because Bailey could not do so without violating his ethical obligations to both clients. No. 4:09-cr-00222-ALM-KPJ-2 (E.D. Tex.), Dkt. 234. And during the trial, Bailey violated an *in limine* order while cross-examining a different witness, resulting in a mistrial and sanctions. *Id.* Dkts. 273, 285.

Another court presented with the appointment of standby counsel as a proposed solution to the attorney-as-witness problem cautioned against the practice. In *United States v. Rahman*, the court confronted a situation in which former clients of a law firm were expected to testify against a current client of the firm. 861 F. Supp. 266, 277 (S.D.N.Y. 1994). Much like Bailey has here, the attorneys in *Rahman* argued that the "entire conflict of interest issue is a contrivance conjured by the government as an excuse to get rid of them." *Id.* at 277–78; *see* Dkt. 124 at 2 (Bailey's argument that the timing of the government's motion to disqualify is "purely an attempt to cover up the litter box of [the prosecution's] own misconduct"). The attorneys asked the court to appoint standby counsel to take over during the parts of the trial when the conflict between the former-client witnesses and the current-client defendant would raise ethical issues. But the court declined, explaining that

> [e]ven if substitute counsel could cross-examine former clients of the [conflicted] firm, there is no assurance that information potentially damaging to one of those clients would not appear during the examination of other witnesses. The court and counsel would have to remain constantly alert to detect such potential damage. When it was detected, the . . . firm would have to abandon cross-examination relating to such information, and let standby counsel take over. The same problem would afflict openings and summations, with the . . . firm barred ethically from making any argument or previewing any proof that could adversely affect any of its former clients at risk in this case. Thus, cross-examination for [the defendant's] benefit, and indeed his entire representation, would be conducted in the manner of

13

> a fugue, with the . . . firm developing only themes that could not damage its former clients, and standby counsel developing the themes that could.

*Id.* at 277. The court also noted the significant risk that "any miscalculation of the potential effect of any argument or item of evidence would enable [the defendant] to argue on appeal that his representation had been adversely affected by a conflict of interest." *Id.*

The court is not willing to take those or similar risks here. It will therefore restrict Bailey's representation to pretrial matters.

* * *

To sum up, an attorney may be disqualified from jointly representing multiple criminal defendants when the joint representation raises actual or serious potential conflicts of interest. An attorney may also be disqualified if his representation of a defendant undermines the court's independent interest in conducting trials that comport with the ethical standards of the legal profession and appear fair to the public, including when the attorney's firsthand knowledge of the events presented at trial would put him in the position of an unsworn witness.

Bailey's participation in this case raises each of those concerns. His representation of the four codefendants presents a serious potential conflict of interest, and his firsthand knowledge of the confidential informant's allegedly corrupt conduct in obtaining evidence against the defendants creates the potential that he will act as an unsworn witness or that he will be called as a sworn witness. Based on the combination of those concerns, the court finds that the defendants' waivers will suffice to preserve their rights and the integrity of the judicial system only if the conditions stated below are imposed.

## CONCLUSION

It is **ORDERED** that the motion to disqualify Bailey, Dkts. 120 (sealed), 149 (redacted version of the same filing), is **DENIED** and that the duplicate motion, Dkt. 123, is **DISMISSED AS MOOT**.

It is further **ORDERED** that Bailey may represent Rivera-Rodriguez, Betancur-Correa, and Polania-Marin only under the following conditions:

1) Each defendant will be represented by court-appointed independent co-counsel, members of the Criminal Justice Act Panel of this district selected through the court's ordinary process for appointing counsel for indigent defendants in accordance with the Criminal Justice Act, 18 U.S.C. § 3006A, as follows:
    a. Stephen Green will represent Rivera-Rodriguez;
    b. Tim Menchu will represent Betancur-Correa; and
    c. Camille Knight will represent Polania-Marin;
2) Independent co-counsel must be afforded the opportunity to discuss the case with his or her client outside of Bailey's presence upon request by the client;
3) Bailey may, in consultation with co-counsel, represent the defendants in all pretrial matters; and
4) Bailey may not represent the defendants at trial by making opening or closing statements, examining witnesses, sitting at counsel table, or conferring with the defendants or co-counsel in the presence of the jury.

So **ORDERED** and **SIGNED** this 24th day of January, 2025.

_____
Bill Davis
United States Magistrate Judge