IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § <br> § <br> v. § <br> § <br> REINALDO DE JESUS RIVERA- § <br> RODRIGUEZ (1), EUGENES § <br> BETANCUR-CORREA (2), JESUS § <br> ANIBAL RUIZ-HENAO (3), and § <br> OSCAR ANTONIO POLANIA-MARIN § <br> (4) | NO. 4:22-CR-00268-SDJ-BD <br><br> SEALED |

## MEMORANDUM OPINION AND ORDER

Attorney Don Bailey represents four codefendants in this case. The government moved to disqualify him based on alleged conflicts of interest arising from the joint representation. Dkt. 120. The court denied the motion but limited Bailey's representation of the codefendants to pretrial matters and appointed independent co-counsel for each codefendant. Dkt. 200; *see* Dkt. 206 (the codefendants' pending appeal of Dkt. 200). The government has now filed another motion to disqualify Bailey and sought to file its most recent disqualification motion under seal. Dkts. 279 (sealing motion), 280 (disqualification motion); *see* Dkts. 281 (response to sealing motion), 299 (response to disqualification motion). The motions, Dkts. 279, 280, will be granted.

## BACKGROUND

The four codefendants are accused of participating in an international drug-trafficking conspiracy but deny any involvement in it. They are jointly represented by Bailey, the target of the government's disqualification motion, and the four independent co-counsel that the court previously appointed. The government argues that the codefendants' interests are adverse and that Bailey's duty of loyalty to each codefendant creates an actual conflict that prevents Bailey from jointly representing any one of them.

The government asserts that, after Colombian authorities arrested him, one of the codefendants agreed to speak with a United States Drug Enforcement Administration agent.

During that interview, the codefendant allegedly told the agent that another codefendant "was connected to" a drug-trafficking organization and "conducted [a] narco-traffic[king] meeting in Narino, Colombia" with a person affiliated with that organization. Dkt. 298-1 at 2. The codefendant also allegedly told the agent that the two other codefendants "distributed narcotics for" that codefendant. *Id.* The purported statements are memorialized in a report that the court admitted as an exhibit at a hearing on the government's disqualification and sealing motions. Sealed Minute Entry for Oct. 27, 2025; Dkt. 298-1. The government intends to call the agent who conducted the interview to testify at trial.

The codefendants deny that the statements documented in the report were made. They insist that they will not implicate one another because they are all innocent—and, for that reason, necessarily lack knowledge of anything that could be used against the others.

The codefendants, Bailey, and all four independent co-counsel attended the hearing on the government's motions. At the hearing, Bailey admitted that his disqualification would be required if the interviewed codefendant had actually made a statement incriminating the others. But he claimed that no such statement had in fact been made. He reiterated that the codefendants maintain their innocence, individually and collectively, and have no interest in pleading guilty or cooperating with the government. He assured the court that if any of the codefendants expressed an interest in cooperating, he would withdraw. Each independent co-counsel supported that position and, after confirming that he or she had consulted with his or her client, stated that Bailey should remain on the case.

Having previously signed waivers and responded to the court's questioning in accordance with *United States v. Garcia*, 517 F.2d 272 (5th Cir. 1975), the codefendants affirmed that they are aware of the government's allegations. They deny those allegations and want Bailey to continue representing them.

# LAW

## I. Sealing

"[S]ealing information placed in the judicial record" is "heavily disfavor[ed]." *June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 519–20 (5th Cir. 2022). "Judicial records belong to the American people; they are public, not private, documents." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 417 (5th Cir. 2021).

There are, of course, good reasons to seal some court documents—such as when public disclosure of "sensitive information . . . could endanger lives or threaten national security." *Binh Hoa Le*, 990 F.3d at 417. The court may order a document sealed if the interests favoring nondisclosure outweigh the "public's common law right of access." *SEC v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993).

## II. Disqualification

A motion to disqualify counsel is a non-dispositive matter on which a magistrate judge may issue an order. *United States v. Melton*, 948 F. Supp. 2d 998, 1001 (N.D. Iowa 2013) (collecting cases); *see Beasley v. Greenlee*, No. 3:22-cv-00532-X-BT, 2023 WL 11987210, at *1 (N.D. Tex. Mar. 9, 2023); *Myart v. Frost Bank*, No. SA-19-cv-00753-OLG, 2020 WL 33599, at *8 (W.D. Tex. Jan. 2, 2020). (At the most recent hearing, the court described its previous order as a "recommendation." *See* Sealed Minute Entry for Oct. 27, 2025. It is, in fact, an order—albeit one subject to the codefendants' pending appeal to the district judge.)

The Sixth Amendment gives a criminal defendant a right to retain the counsel of his choice, *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144, 147–48 (2006), and also a right to conflict-free counsel, *Wheat v. United States*, 486 U.S. 153, 157 (1988). When those two rights are in tension, they must be balanced to ensure that the defendant has a fair trial and that the integrity of the adversarial process is maintained. *Id.* at 157–58. Although a single attorney may represent multiple defendants, courts must remain aware that multiple representation creates special dangers that may warrant separate counsel. *Id.* at 159–60.

A defendant may waive his right to conflict-free counsel if the court advises him of his rights, he understands the risks associated with the conflict, and he waives his rights knowingly and voluntarily. *Garcia*, 517 F.2d at 278. If a defendant waives his right to conflict-free counsel, there is a presumption in favor of allowing him to keep his counsel of choice. *United States v. Plewniak*, 947 F.2d 1284, 1289 (5th Cir. 1991).

But that presumption can be, and often is, overcome. Courts have an "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Gonzalez-Lopez*, 548 U.S. at 152. For that reason, they may decline to accept defendants' conflict waivers. *Wheat*, 486 U.S. at 162. And because "a district court must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly," the court has significant leeway to determine whether a waiver adequately protects the defendant's right to conflict-free representation. *Id.*

As the Supreme Court explained in *Wheat*,

> [t]he likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials. It is a rare attorney who will be fortunate enough to learn the entire truth from his own client, much less be fully apprised before trial of what each of the Government's witnesses will say on the stand. A few bits of unforeseen testimony or a single previously unknown or unnoticed document may significantly shift the relationship between multiple defendants. These imponderables are difficult enough for a lawyer to assess, and even more difficult to convey by way of explanation to a criminal defendant untutored in the niceties of legal ethics. Nor is it amiss to observe that the willingness of an attorney to obtain such waivers from his clients may bear an inverse relation to the care with which he conveys all the necessary information to them.

*Id.* at 162–63. For that reason, a "district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Id.* at 163.

In short, a district court "must recognize a presumption in favor of petitioner's counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict. The evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court." *Id.* at 164.

## DISCUSSION

### I. Sealing

Few interests weigh heavily enough to warrant sealing judicial records. The interests at issue here, however, do.

As noted, the government's disqualification motion is based on statements that one of the codefendants allegedly made implicating the others. The statements specifically name two drug-trafficking organizations and some of their participants. Dkt. 298-1 at 2. The government argues that, if word got back to Colombia that the codefendant had made the purported statements, the codefendant's family would be at risk of physical harm.

Although Bailey filed a response in opposition to the government's sealing motion and argued against sealing at the hearing, an independent co-counsel parted ways with him, agreeing with the government at the hearing that sealing was appropriate. The government and independent co-counsel are correct. It does not matter whether the codefendant actually made the statement. If people think he did, that belief could endanger lives. *See Binh Hoa Le*, 990 F.3d at 417.

### II. Disqualification

Multiple representation may divide an attorney's loyalties between or among clients. It might prevent counsel from challenging evidence that is prejudicial to one client but favorable to another, minimizing the culpability of one defendant by emphasizing that of another, or exploring the possibility of a plea agreement that would require one client to testify against another. *United States v. Sanchez Guerrero*, 546 F.3d 328, 333–34 (5th Cir. 2008).

At the hearing, the government argued that the incriminating statements would force Bailey to choose between cross-examining the codefendant who allegedly made them, to the benefit of the other three codefendants, or cross-examining only the interviewing agent, to the benefit of the codefendant who allegedly made the statements. Sealed Minute Entry for Oct. 27, 2025. And, indeed, a lawyer who knew that one of his clients was likely to implicate another in testimony would have a disqualifying conflict. *See Harris v. Carter*, 337 F.3d 758, 760 (6th Cir. 2003); *United States v. Bailin*, 731 F. Supp. 865, 871 (N.D. Ill. 1990); *Irving v. Hargett*, 518 F. Supp. 1127, 1142 (N.D. Miss. 1981). But because the alleged statements at issue here were not self-incriminating and the codefendants maintain their collective innocence, there is only the potential for such a conflict.

The scenario the government envisions is similar to the one described in *Baker v. Wainwright*, 422 F.2d 145 (5th Cir. 1970). In that case, an attorney represented two codefendants, one of whom had made a confession that implicated the other. *Id.* at 146. A conflict existed because the confession could be used against the defendant who made it regardless of whether he took the witness stand. *See* Fed. R. Evid. 801(d)(2)(A). But the parts that implicated the declarant's codefendant were admissible only if the declarant took the stand. *See Bruton v. United States*, 391 U.S. 123, 123–26 (1968). That meant the declarant could either testify to deny his confession, which would prejudice his codefendant, or not testify, which would prejudice the declarant himself. *Baker*, 422 F.2d at 148.

The scenario here is different because the statements at issue are not self-incriminating. That means the codefendant who allegedly made them has no need to take the stand to defend himself. It is, however, hard to know what to make of the codefendant's present denial of his alleged statements, especially given that he is housed in the same pretrial-detention facility as one of the codefendants he allegedly implicated and was standing just feet away from all of them at the hearing. Viewing the situation "through a glass, darkly" at this pretrial phase, *Wheat*, 486 U.S. at 162, it appears possible, and perhaps likely, that the purported statements will become a wedge between one of the codefendants and the others—who, consistent with Bailey's strongly voiced and oft-repeated views, are currently maintaining a united front of innocence. *See United States v.*

6

*Gharbi*, 510 F.3d 550, 553 (5th Cir. 2007) (confirming that a serious potential for conflict may overcome the presumption in favor of a defendant's counsel of choice); *see also United States v. Martinez*, No. 4:12-CR-161, 2014 WL 1267125, at *1 (E.D. Tex. Mar. 27, 2014) (case in which Bailey represented a defendant who "maintained his innocence until the start of the trial, at which time he entered a guilty plea"), *aff'd*, 616 F. App'x 131 (5th Cir. 2015).

For reasons previously explained, the court restricted Bailey's participation at trial but allowed him to represent the codefendants alongside independent co-counsel before trial begins. Dkt. 200 at 11–15. It did so out of deference to the codefendants' desire that Bailey continue representing them. But the facts previously before the court would have supported Bailey's full disqualification, given the substantial leeway district courts have in this area. *See Wheat*, 486 U.S. at 162–63.

Additional developments both before and after the most recent hearing support Bailey's disqualification in full and indicate that the codefendants will be well represented without Bailey's participation as a member of the defense team. The independent co-counsel have now been on the case several months. Three of them were appointed in January of this year; the fourth was appointed in June. Dkts. 200, 255. As their contributions at the hearing confirmed, they are familiar with the case and will argue ably on behalf of their clients—even when their views differ from Bailey's. Yet as the government argued at the hearing, Bailey has an oversized presence in the case. Given his longer relationship with them, the codefendants are unlikely to disregard his advice, even if one or more of them would benefit from doing so. In light of the serious potential conflict presented, prudence favors disqualification. *See Sanchez Guerrero*, 546 F.3d at 333–34.

In its previous order, the court noted that several of Bailey's filings only increased the court's concerns about his continuing involvement here. Dkt. 200 at 12–13 (noting Bailey's assertions that the government's confidential informant attempted to frame both Bailey's clients and Bailey himself, that Bailey "looks forward to cross examining" the confidential informant, Dkt. 148 at 5–6, and that Bailey's conduct in another trial in which he represented multiple defendants caused a mistrial and resulted in a sanctions award of more than $8,000 against Bailey personally). Bailey's additional filings have further increased those concerns.

For example, in a motion to compel discovery signed only by him, Bailey asserted that Wes Wynne, the government's attorney,

> recently whined to Judge Davis that Counsel should be removed from pro bono representation of four innocent clients in this case, asserting that current counsel hates him, while asserting he had "new evidence." Counsel pointed out to Judge Davis that the Government had been in possession of the "new evidence" [s]ince August of 2023, and thus Mr. Wynne was lacking candor before the Court. Counsel does not hate anyone currently alive, but despises a prosecutor who is willing to send innocent people to prison.

Dkt. 308 at 10. In another recent filing, Bailey asserted that

> the Government needs to quit trying to win at all cost by lying to the Court, Counsel and the public. This case should be dismissed by an ethical prosecutor but Counsel knows otherwise with Mr. Wynne going back to when he was a misdemeanor prosecutor in Collin County. These four innocent victims deserve better than the most unethical prosecutor counsel has interacted with in 35 years of federal practice.

Dkt. 309 at 2. Bailey has even used surprisingly strong language to criticize, among other things, the court's adherence to a standard convention of judicial writing:

> Counsel fundamentally rejects the Magistrate Judge's recommendation as unconstitutional and setting a dangerous precedent, resents the disrespect of repeatedly being called "Bailey" instead of what attorneys and courts generally refer to each other, and submits this appeal because it is unconstitutional, shows a fundamental lack of understanding of criminal practice and denies the innocent clients the attorney of their choice.

Dkt. 257 at 1 & n.1 (adding, in a footnote, that "Counsel has last been referred to as 'Bailey' when he began his military career in 1986. By retirement in 2016, Counsel was always at least Mr. Bailey, and believes respect is a two way street in life and in the court setting"); *cf. Martinez*, 2014 WL 1267125, at *1 (finding "offensive and lacking in merit" the assertion in a filing signed by Bailey that "[t]he Magistrate Judge has created false barriers in order to maintain a guilty plea of a person who has asserted he was coerced into pleading guilty and otherwise maintained his innocence").

Whatever else they might show or fail to show, those assertions are further evidence of Bailey's personal connection to the case, raising the appearance that Bailey is filing documents on his own behalf as much as he is filing them on behalf of his clients. Even if his personal interests are aligned

with those of his clients, that approach strays from the representative role of a lawyer and underscores the problems that the court previously identified. For that reason, Bailey's continuing participation on the defense team could disrupt both pretrial proceedings and trial proceedings conducted outside of the jury's presence. *See* Dkt. 200.

Additionally, it is at least questionable that Bailey's involvement as counsel is in the best interests of his clients. As noted, independent co-counsel are already well positioned to represent their clients zealously and effectively. With Bailey disqualified, they would also be free to call him as a witness at trial. And based on his representations to the court, Bailey might reasonably be viewed as a strong witness for the defense. *See United States v. Simon*, No. CIV.A. 03-067, 2003 WL 21146816, at *2 (E.D. La. May 14, 2003) (Engelhardt, J.) (concluding, in a case in which a criminal defense attorney had an "intimate connection to the events and documents underlying the Indictment," that the attorney's "representation of the defendant could deprive defendant of the most important witness who could testify on her behalf," creating serious "threats to the defendant's interests and to the process" that "outweigh[ed] the presumption that exists in favor of defendant's counsel of choice" and therefore required the attorney's disqualification).

At the hearing, one of the independent co-counsel asked the court to modify its order on the government's earlier disqualification motion. In relevant part, the order states that "[i]ndependent co-counsel must be afforded the opportunity to discuss the case with his or her client outside of Bailey's presence upon request by the client." Dkt. 200 at 15; *accord* Dkt. 255 at 1. Co-counsel expressed concern that the quoted language requires the clients to initiate contact with co-counsel. But the court did not intend to create a one-way street. If any co-counsel wanted to confer with a client, he or she was free to reach out to him to discuss the case outside of Bailey's presence, just as any client could have reached out to his independent co-counsel to do so. That concern, however, will no longer apply in light of this order. The attorneys who previously served alongside Bailey as independent co-counsel will now serve as lead (and perhaps sole) counsel; their lines of communication with their clients will not be restricted in any way.

9

## CONCLUSION

It is **ORDERED** that:

1) the disqualification motion, Dkt. 280, is **GRANTED** and Bailey is **DISQUALIFIED** from representing any of the four codefendants; and

2) the motion for leave to file the disqualification motion under seal, Dkt. 279, is likewise **GRANTED**.

So **ORDERED** and **SIGNED** this 17th day of November, 2025.

_____
Bill Davis
United States Magistrate Judge